**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| LINDA L. BARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 3:08-CV-950-TFM |
| MICHAEL J. ASTRUE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*, Linda L. Barker ("Barker") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I. STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Barker, age 47 at the time of the hearing, completed tenth grade.  Barker's past relevant work includes department store stocker, cleaner, packer, and cashier. She has not engaged in substantial gainful work activity since the alleged onset date of January, 2004.[1]  Barker's disability application claims she is unable to work because of fibromyalgia and angina, back and leg problems, and nerve and bowel problems.[2]

The ALJ found Barker is severely impaired by major depression, post traumatic stress disorder, fibromyalgia, and degenerative joint disease of the lumbar spine due to a previous compression fracture.  The ALJ found this combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[3]  This finding was based upon the record evidence considered by the ALJ, including the absence of an opinion by any treating or examining source that Barker is unable to work.[4]

Barker's application and hearing testimony cite major depression, post traumatic stress disorder, fibromyalgia and degenerative joint disease of the lumbar spine.[5]  The application states Barker stopped working in September of 2004 after being "laid off because [she] could not be placed."[6]  Her application listed prescriptions for Neurontin for nerve damage suffered in an auto collision, and Cymbalta for depression.[7]  Barker

---

[1] The onset date was amended from September 30, 2004, to January, 2004, during Barker's administrative hearing. R. at 330.
[2] R. at 70.
[3] R. at 25.
[4] R. at 25.
[5] R. at 70, 310-12.
[6] R. at 71.
[7] R. at 310.

3

attributes her weight loss of 30 pounds to depression and stress.[8]  She reported working 17 to 20 hours per week as a cashier.[9]  She experiences a great deal of pain because her job requires her to lift heavy ice and remain on her feet for the entire five hour shift.[10]  Barker testified that her boss assigns her to work the cash register because she is "good with the customers" and is very friendly with them.[11]  Her job is affected when she has trouble concentrating due to her own pain and stress over her son with ADHD.[12]

Medical records from Dr. Eunice Ampiaw, Barker's treating physician, begin in January, 2002.  Dr. Ampiaw noted complaints of generalized pain everywhere, mainly in the legs and lower back, and found Barker anxious and depressed.[13]  Follow-up visits document Barker's pain related to her auto accident injuries and depressed state.  In October of 2002, Barker asked to switch from Zoloft to Prozac and requested Oxycodone for unbearable pain.[14]  On January 9, 2003, Barker told Dr. Ampiaw that her application for special supplemental income was denied and that she would like her help on reapplication.[15]  An examination by Dr. Reinaldo Verson, neurologist, in February of 2003 showed evidence compatible with fibromyalgia, and Dr. Verson confirmed that impression after an examination on March 31, 2003.[16]  Also in March, 2003, Barker told Dr. Ampiaw that Prozac made her jittery and requested Xanax.  Dr. Ampiaw warned Barker of the problems associated with regular use of that medication and complied with

---

[8] R. at 312.
[9] R. at 315.
[10] R. at 322-23.
[11] R. at 325.
[12] R. at 323.
[13] R. at 153-54.
[14] R. at 144.
[15] R. at 140.
[16] R. at 139, 133.

4

the request.[17]  Dr. Ampiaw wrote during an office visit on June 18, 2003 that Barker did not refill her Prozac prescription and plans to apply for disability.[18]

Scott Stewart, Ph.D., gave Barker a psychological evaluation on June 17, 2005. Dr. Stewart opined that Barker lacks the interpersonal skills required to relate to others in a work setting and seems unable to sustain the attention needed to do repetitive tasks. He noted Barker's self report of problems associated with Posttraumatic Stress Disorder, Major Depressive Disorder, and Pain Disorder related to psychological factors and fibromyalgia. Dr. Stewart wrote that Barker does not need assistance with daily activities and that her prognosis is guarded for a favorable response to treatment.[19] A consulting physical examination was performed by Dr. Michael Johnston on June 20, 2005. Dr. Johnston observed Barker to be frail with a chronically ill appearance.[20] He diagnosed fibromyalgia and degenerative joint disease of the lumbar spine due to a previous compression fracture.[21]

Dr. Aileen McAlister completed a Psychiatric Review Technique Form (PRTF) from a review of Barker's records. Dr. McAlister found Depressive syndrome and anxiety-related disorder.[22] The review found Barker is partially credible as to residual pain from her auto-accident injuries, fibromyalgia, and nerve problems.[23] Dr. McAlister found Barker has moderate limitations in activities of daily living, maintaining social

---

[17] R. at 135-36.
[18] R. at 131.
[19] R. at 212.
[20] R. at 214.
[21] R. at 215.
[22] R. at 228, 230.
[23] R. at 231, 238.

functioning, and maintaining concentration, persistence, or pace.[24] The Mental Residual Functional Capacity (RFC) form completed by Dr. McAlister found Barker can understand and remember simple instructions, can perform simple tasks over an 8-hour workday, and may have casual and non-confrontational contact with coworkers, supervisors, and general public.[25] Dr. McAlister wrote that workplace changes should be introduced slowly due to fibromyalgia/pain/depression/anxiety/post-traumatic stress disorder.[26]

Dr. Lorene Henderson performed an assessment of Barker's physical RFC from a review of her medical records.[27] Dr. Henderson found Barker can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand and/or walk for up to 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday.[28] Barker can occasionally climb stairs, stoop, kneel, crouch, and crawl, but can never balance.[29] Dr. Henderson's RFC statement is the only assessment of Barker's physical capabilities, as the record does not include a statement from any treating or consulting physician.[30]

Dr. Sidney Garner testified as a medical expert at Barker's administrative hearing. Dr. Garner's discussion of the psychological report prepared by Dr. Stewart noted the lack of ongoing treatment and his own opinion that Barker does not meet or equal the regulatory listings for Sections 12.04 or 12.06.[31] Dr. Garner acknowledged that the

---

[24] R. at 236.
[25] R. at 242.
[26] R. at 242.
[27] The Commissioner's brief explains that Lorene Henderson is an internist. *See* Def. Br. at 5, n.4.
[28] R. at 245.
[29] R. at 246.
[30] R. at 249.
[31] R. at 328.

combination of Barker's conditions could impair functioning and recommended Barker seek treatment.[32] Dr. Garner's review of Barker's records led him to pinpoint January of 2004 as the onset of Barker's anxiety and depression.[33]

Dr. Patrick Sweeney provided vocational expert (VE) testimony at Barker's administrative hearing. The ALJ asked Sweeney to assume Barker's vocational profile and the restrictions in the physical RFC prepared by Dr. Henderson (Exhibit 8F). The VE replied that Barker would only be able to perform her past work as a cashier, but could also perform other unspecified light work jobs.[34] The ALJ referred back to Barker's testimony about her functional limitations and restrictions and asked the VE whether, if he found those restrictions and limitations to exist, Barker could still perform her past work as a cashier. The VE testified that she could.[35] Additional consideration about the range of Barker's specific duties as a cashier led the VE to revise his classification of Barker as a kitchen helper, rather than a cashier. He stated that the work was medium level and not within the abilities of a person limited to the work activity in the RFC.[36]

The ALJ stated that he considered the record in reaching his findings. He gave substantial weight to the conclusions reached by Drs. McAlister and Henderson as to Barkers mental and physical abilities.[37] He found Barker is severely impaired by major depression, post traumatic stress disorder, fibromyalgia and degenerative joint disease of

---

[32] R. at 328-29.
[33] R. at 329-30.
[34] R. at 318-19.
[35] R. at 319.
[36] R. at 322-24, 325.
[37] R. at 26.

the lumbar spine due to a previous compression fracture.[38]  This combination of impairments, however, does not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  Barker's allegations of pain and functional limitation were found not credible, and the ALJ adopted the RFC assessment by Dr. Henderson of the state agency to find that she can perform her past relevant work as a cashier.[39]

The ALJ began his discussion of Barker's credibility by stating that her testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence, and the record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged.  In particular, the ALJ stated the physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain alleged by Barker.[40]  The ALJ cited Barker's application statement that she stopped working after being laid off and the fact that she was not taking any medications for her allegedly disabling symptoms in December, 2006.[41]  Also considered was a statement from Joan Copeland, Barker's mother, who reported in May, 2005, that Barker cleaned house, cooked three meals a day, had no problems getting along with others, sometimes had difficulty remembering and

---

[38] R. at 28.
[39] R. at 28.
[40] R. at 26.
[41] R. at 26; 71, 120.

concentrating, and was slow and nervous.[42]  Finally, the ALJ noted Barker's current part-time employment and testimony that she gets along well with customers.[43]

The ALJ relied upon the VE's testimony to find Barker is able to perform her past work as a cashier as that job is generally performed.[44]  The finding that Barker can perform past work led the ALJ to conclude she is not entitled to disability benefits under the Act.[45]

### III.  ISSUES

Barker raises two issues for judicial review:

1. Whether the ALJ improperly gave greater weight to the opinions of the state agency non-examining consultants; and

2. Whether the ALJ failed to properly evaluate Plaintiff's subjective complaints.

### IV.  DISCUSSION

**1. The ALJ did not err when he gave greater weight to opinions from non-examining state agency consultants.**

Barker argues the ALJ erred by improperly giving greater weight to the opinions from state agency consultants.  She argues the opinions issued by Dr. Scott Stewart (as to her mental health) and Dr. Michael Johnston[46] (as to her physical condition) are entitled to greater weight than the opinions reached by Drs. McAlister and Henderson.  The Commissioner responds the state agency opinions are consistent with the examining

---

[42] R. at 26; 103-06.
[43] R. at 26; 325.
[44] R. at 28, 27.
[45] R. at 28, 27.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).
[46] Barker's brief incorrectly refers to the examining physician as "Dr. Johnson."

opinions, as the former were used by the state agency, and therefore support the ALJ's RFC determination that Barker can perform her past work as a cashier.

Barker's arguments against the ALJ's decision to give substantial weight to the state agency opinions contend the ALJ erred because "the opinions of non-examining reviewing physicians when contrary to those of examining physicians are entitled to little weight . . . and standing alone do not constitute substantial evidence." Pl. Br. at 8, citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). The *Sharfarz* decision continues to state "[O]f course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz, id.*, citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Barker contrasts the ALJ's recognition of Dr. Stewart's findings (that she *appears* "to lack the interpersonal skills required to relate to others in a work setting and *seemed* unable to sustain the attention needed to perform repetitive tasks") with Dr. McAlister's findings.[47] Dr. Stewart's report found Barker's self report of anxiety, panic attacks, and depression to be reliable, but that she is fully able to manage her own activities of daily living. Dr. McAlister found Barker has moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Her conclusions differ from Dr. Stewart's because she found Barker capable of understanding and remembering simple instructions and performing simple tasks during an 8-hour workday. The Court does not find ALJ error based on his decision to credit Dr. McAlister's opinion because the record contains evidence, specifically referenced by the

---

[47] Pl. Br. at 6-7 (emphasis added).

ALJ, that supports Dr. McAlister's findings. *Sharfarz, id*., citing *Sryock.* The ALJ cited Barker's testimony of her ability to interact appropriately and positively with customers in her job as a cashier.[48] Dr. Stewart's conclusion that Barker *seems* unable to sustain the attention needed to perform repetitive tasks is also negated by her ongoing job performance. In this regard, Dr. McAlister emphasized Barker's ability to perform simple tasks, with a recommendation that workplace changes be introduced slowly due to fibromyalgia/pain/depression/anxiety/post-traumatic stress disorder.[49] The ALJ cited Barker's various work tasks such as making tea, emptying trash, sweeping and mopping.[50] Her performance of these simple and repetitive tasks indicate that she can, in fact, do what Dr. Stewart believed she was unable to do.

Barker's brief also argues that the medical expert's opinion should have received more consideration by the ALJ. Dr. Sidney Garner testified that Barker was not in treatment but could benefit from some, and would likely experience functional impairment from her multiple diagnoses. Dr. Garner explained that Barker's condition did not reach disability levels in the regulatory listings.[51] The hearing transcript shows Dr. Garner urged Barker to seek treatment, but the ALJ is not required to award benefits simply because she has "some impairments of functioning."[52] The mental RFC submitted by Dr. McAlister and adopted by the ALJ incorporated Barker's impairments and the limitations arising therefrom.

---

[48] R. at 27.
[49] R. at 242.
[50] R. at 27.
[51] R. at 327-28.
[52] R. at 328.

11

Barker's physical examination by Dr. Johnston and the RFC prepared by Dr. Henderson are also consistent on most points. She correctly notes that Dr. Johnston "did not offer any specific opinion as to any limitations [she] might experience from her fibromyalgia symptoms," but argues it would seem reasonable that a significantly reduced range of motion in reports of pain and swelling would imply some limitation.[53] The RFC incorporates Dr. Johnston's diagnoses of fibromyalgia and compression fracture, as well as his findings on exam.[54] The ALJ asked the VE to state whether a person so limited by this RFC could perform Barker's past work. The VE responded that "8F restricted her to light work" and would rule out all of her past work except that of cashier.[55] The RFC does limit Barker's ability to work, although not to an extent that supports a finding of disability. Upon questioning about the physical demands of Barker's specific job, the VE testified that the job description was more akin to a kitchen helper and was not within the scope of the RFC (Exhibit 8F).[56] Notwithstanding this testimony, the ALJ noted his reliance on the VE's testimony that Barker could work as a cashier, as that job is generally performed in the national economy.[57] *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Court concludes the ALJ did not err by adopting the only RFC in the record, and crediting testimony that Barker's limitation to light work encompasses her past work as a cashier.

---

[53] Pl. Br. at 7, 8.
[54] R. at 244-45.
[55] R. at 319.
[56] R. at 325.
[57] R. at 27.

## 2. The ALJ properly evaluated Plaintiff's subjective complaints.

Barker argues her undisputed diagnosis of fibromyalgia, together with her testimony of pain and subjective symptoms established disability under the Eleventh Circuit pain standard. The Commissioner responds that the ALJ properly evaluated the credibility of Barker's subjective complaints, correctly applied the Eleventh Circuit pain standard, and issued a finding supported by substantial evidence.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit has set forth criteria for establishing a disability based on testimony of pain and other symptoms. It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a

13

claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a).

Under *Wilson*, a claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown* at 1236. An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson, id*. Here, the ALJ found Barker's testimony is disproportionate to the objective medical evidence, and the physical findings in the record failed to establish the existence of neurological deficits, significant weight loss, or muscle atrophy indicative of the protracted pain with the intensity, frequency, and severity alleged.[58]

Barker's testimony was deemed not credible by the ALJ because of inconsistencies between her testimony and record evidence showing that in May, 2005, she cooked three meals a day, interacted well with others, and was able to care for herself without assistance.[59] Dr. Stewart's findings that she lacks the interpersonal skills to relate to others in a work setting is disputed by Barker's own testimony that she is assigned cashier duties because she is so friendly with customers.[60] The ALJ also noted that Barker indicated she stopped working because she was laid off and was not taking any medication in December, 2006, two years into her alleged disability.[61] "The decision concerning the plaintiff's credibility is a function solely within the control of the

---

[58] R. at 26.
[59] R. at 26-27.
[60] R. at 27; 212, 325.
[61] R. at 26; 71, 120.

Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

The Court acknowledges the peculiar problems presented in disability determinations where a claimant has fibromyalgia. In *Moore v. Barnhart,* 405 F.3d 1208 (11th Cir. 2005), the Eleventh Circuit noted that because the "hallmark" of fibromyalgia is a lack of objective evidence, an ALJ cannot find a claimant's testimony "was incredible based on the lack of objective evidence." *Moore*, 405 F.3d at 1211, discussing *Stewart v. Apfel*, No. 99-6132, 245 F.3d 793, 2000 U.S.App. Lexis 33214 (11th Cir. Dec. 20, 2000). An ALJ can, however, rely upon "inconsistencies between [a claimant's] descriptions of her daily activities and her claims of infirmity." *Moore, id.* at 1212. In a recent case involving alleged disability due to fibromyalgia, the Eleventh Circuit cited *Moore* and noted an ALJ's consideration of all record evidence, including prior work records, a claimant's statements, evidence from treating and nontreating sources, and observations by other persons. *Robinson v. Astrue,* No. 09-12472, 2010 WL 582617 at *4 (11th Cir. Feb. 19, 2010). Here, the ALJ cited record evidence that Barker's full time employment ceased due to a lay off, a report from her mother that she was able to cook three meals a day after the date of alleged onset, her ability to manage activities of daily living, and ongoing part-time work.[62] *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (citing claimant's daily activities, medication, and inconsistencies between testimony and record).

---

[62] R. at 26-27.

The Court notes that the ALJ's statement that a lack of "objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged" by Barker would normally require remand under *Moore*. However, the record contains, and the ALJ gave specific reasons for doubting Barker's credibility. *Brown, id*. Even in fibromyalgia cases where objective signs and findings are not in the record, the ALJ is permitted to rely upon inconsistencies between testimony and the record. *Moore, id.* The ALJ's citation to conflicting evidence in the record thus saves this case from remand, as it is the credibility findings, rather than the ALJ's rejection of Barker's subjective testimony about pain and disability, that provide substantial evidence for the decision. The record supports his findings, and there is no reversible error as to this issue.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 15th day of March, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE